Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| **RANDY COUTÍN RODRIGUEZ**<br><br>Apelante<br><br>v.<br><br>**PIRETTE UNIFORMS, INC.; DRAPERY CREATIONS OF PIRETTE, INC.; JUNTA DE DIRECTORES DE PIRETTE UNIFORMS, INC.; JUNTA DE DIRECTORES DE DRAPERY CREATIONS OF PIRETTE, INC.; SUCN. DE EMMA PEREZ LABIOSA**<br><br>Apelada | KLAN202300789 | **APELACION**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil núm.:<br>**K AC2014-0649 (603)**<br><br>Sobre:<br>**Ley de Corporaciones; Contencioso** |

Panel integrado por su presidenta la juez Lebrón Nieves, la juez Santiago Calderón y el juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 agosto de 2024.

Comparece ante nos, Randy Coutín Rodríguez, en adelante, Coutín Rodríguez o apelante, solicitando que revoquemos la *"Sentencia"* notificada por el Tribunal de Primera Instancia, Sala de San Juan, en adelante, TPI-SJ, el día 11 de abril de 2023. En el dictamen apelado, el Foro Primario declaró "Ha Lugar" la reconvención y *"Moción en Solicitud de Sentencia Sumaria"* de la parte apelada en el caso de autos.

Por los fundamentos que expondremos a continuación, *confirmamos* la *"Sentencia"* en cuestión.

---

[1] Véase Orden Administrativa OATA-2023-165 del 22 de septiembre de 2023, donde se designa al Juez Alberto Luis Pérez Ocasio en sustitución de la Juez Eileen J. Barresi Ramos.

**I.**

Antes de adentrarnos en los asuntos procesales que desencadenaron la controversia que aquí nos ocupa, precisa que desglosemos varios hechos relevantes a las partes y la materia de autos:

1. Piterre Uniforms, Inc., en adelante, PUI, es una corporación dedicada a la manufactura de cortinas, tapices y productos de esa naturaleza, incorporada en el año 1974.[2]

2. En sus comienzos, las accionistas de PUI eran Emma Pérez Labiosa, en adelante, Pérez Labiosa y Lilliam Bonnet de Rexach, en adelante, Bonnet de Rexach. De las 50,000 acciones de PUI, 20,000 se emitieron a favor de Bonnet Rexach y 30,000 a favor de Pérez Labiosa.[3]

3. Desde el año 1979, Pérez Labiosa, advino a ser dueña de la totalidad de 50,000 acciones de PUI. Esto último, cuando Bonnet de Rexach cedió sus acciones a Pérez Labiosa.[4]

4. Coutín Rodríguez alegó que desde el 1977, tanto él como Pérez Labiosa eran dueños del 50% de PUI, cada uno.[5] Alega que su parte la compró por $17,500. Coutín Rodríguez alega haber fungido como secretario, tesorero y presidente de PUI.[6]

5. Para la fecha del 10 de abril de 1981, Pérez Labiosa contrajo matrimonio con Coutín Rodríguez, bajo el régimen de Sociedad Legal de Bienes Gananciales.[7] Al momento de casarse, Pérez Labiosa tenía tres (3) hijas, las cuales fueron adoptadas por Coutín Rodríguez. Posteriormente, el matriomonio Coutín-Pérez procreó otra hija.[8]

---

[2] Apéndice del recurso, pág. 316.
[3] *Id.* pág. 317.
[4] *Id.* pág. 327.
[5] *Id.* pág. 161.
[6] *Id.* pág. 318.
[7] *Id.* pág. 317.
[8] *Id.* págs. 350-351.

6. Drapery Creations of Pirette, Inc., en adelante, DCPI, es una corporación incorporada en el año 1988. La única accionista de DCPI era PUI.[9]

7. En el 2013, la Junta de Directores de PUI emitió una Resolución en la que removió a Coutín Rodríguez de sus posiciones administrativas.[10]

8. El matrimonio Coutín-Pérez quedó disuelto el 26 de febrero de 2014.

9. Pérez Labiosa falleció el 6 de noviembre de 2019, sustituida en los asuntos judiciales por la Sucesión Pérez Labiosa.

Ahora bien, establecidos los hechos que son medulares para el entendimiento del caso de marras, el mismo tiene su génesis el 2 de julio de 2014, cuando Coutín Rodríguez presentó una *"Demanda"* ante el TPI-SJ, contra PUI, su Junta de Directores y Pérez Labiosa, en adelante, las apeladas.[11] En la misma, le solicitó al Foro Primario que anulara su destitución de PUI y ordenara la inspección y producción de los libros corporativos.[12]

En su petitorio, el apelante alegó que el 14 de septiembre de 1974 le compró a Bonnet de Rexach su participación en PUI, por la cantidad de $7,500, además de sufragar la deuda de PUI con $10,000.[13] Alegó que, por estos hechos, desde ese momento, es accionista en un 50% de PUI. Añadió que él se encargó de la administración de la corporación, por lo que recibía una retribución mensual, y los dividendos de esta.[14] Según se desprende en la *"Demanda"*, el 29 de abril de 2014, Coutín Rodríguez, en calidad de accionista, requirió ver los libros y documentos corporativos de PUI, con el propósito de conocer si los asuntos de PUI se conducían de

---

[9] Apéndice del recurso, pág. 317.
[10] *Id.* págs. 48, 92 y 404.
[11] *Id.* pág. 1.
[12] *Id.* pág. 8.
[13] *Id.* pág. 2.
[14] *Id.* pág. 3.

manera adecuada.[15] Informó en su demanda que no se le había permitido evaluar los documentos mencionados.

Posteriormente, el 3 de septiembre de 2014, Pérez Labiosa presentó su *"Contestación a la Demanda"*.[16] Además, añadió una reconvención a su escrito, en el que alegó ser la única accionista de PUI.[17] Pérez Labiosa alegó que el apelante, mediante un patrón de engaños e intimidación, la desplazó de sus poderes y funciones como presidenta y fundadora de la corporación.[18] Alegó que mediante dichas tretas, Coutín Rodríguez sustrajo ilegalmente cuantiosas sumas de dinero de PUI.[19] Por ello, solicitó al TPI-SJ que declara "Sin Lugar" la *"Demanda"* del apelante, y "Con Lugar" su reconvención, además de un desembolso y devolución no menor de diez (10) millones de dólares a PUI.[20]

Más adelante, el 30 de octubre de 2015, se celebró una vista de estado de los procedimientos, en la que ambas partes concluyeron que la controversia principal era si Coutín Rodríguez era accionista, o no, de PUI.[21] Luego de la Conferencia con Antelación a Juicio el 8 de noviembre de 2017, se dispuso para la celebración de una vista evidenciaria el 5 de diciembre de 2017.[22] En esta última, ambas partes prestaron testimonios, incluyendo el de Pérez Labiosa y Coutín Rodríguez, y se estipularon varios documentos como *exhibits*.[23]

Así las cosas, el Foro Primario emitió una *"Sentencia Parcial y Orden"* el 5 de diciembre de 2018.[24] En la misma, el TPI-SJ determinó que Coutín Rodríguez *nunca ha sido accionista de PUI,*

---

[15] Apéndice del recurso, pág. 4.
[16] *Id*. pág. 35.
[17] *Id*. pág. 40.
[18] *Id*.
[19] *Id*. pág. 41.
[20] *Id*.
[21] *Id*. pág. 44.
[22] *Id*. pág. 45.
[23] *Id*.
[24] *Id*. pág. 43.

por lo que ordenó el archivo con perjuicio de su *"Demanda"*.[25] Determinó, además, que el apelante actuó con temeridad al incoar su demanda, por lo que le impuso $5,000 en honorarios a favor de cada una de las demandadas, y las costas del pleito.[26] Por quedar aún pendiente la reconvención de las apeladas, el Foro Primario ordenó una vista para el 28 de enero de 2019.[27]

Inconforme, Coutín Rodríguez apeló ante este Foro el referido dictamen parcial del TPI-SJ, el cual fue confirmado mediante *"Sentencia"* el 30 de diciembre de 2019.[28] En el interín de la referida apelación, Pérez Labiosa falleció.

Así las cosas, los asuntos en el Foro Apelado continuaron, a la luz de la reconvención de la apelada. Luego de varios incidentes procesales, el 21 de julio de 2022, Suzette Coutín Pérez, en adelante, Suzette Coutín, la hija menor del matrimonio Coutín-Pérez, radicó una *"Solicitud de Intervención como Amicus Curiae"*, ante el TPI-SJ.[29] En la misma arguyó que la reconvención de Pérez Labiosa era improcedente.

Por otro lado, el 30 de agosto de 2022, Coutín Rodríguez radicó ante el TPI-SJ una *"Moción de Sentencia Sumaria"*, solicitando que se desestime la reconvención.[30] Alegó que el único hecho en controversia que debía ser resuelto por el Foro Primario, era si las reconvencionistas tenían el derecho de reclamar la devolución de los pagos de dividendos, basándose en la doctrina del pago de lo indebido, asuntos de prescripción o a que como coadministrador de la Sociedad Legal de Bienes Gananciales constituida por el matrimonio Coutín-Pérez, el apelante tenía derecho a recibir el pago

---

[25] Apéndice del recurso, pág. 79.
[26] *Id.* pág. 79.
[27] *Id.*
[28] *Id.* pág. 82. (KLAN201900131).
[29] *Id.* pág. 129.
[30] *Id.* pág. 139.

de los dividendos correspondientes a la referida sociedad.[31] Además, expuso dieciocho (18) hechos materiales que, a su juicio, no estaban en controversia, sustentándolos con la siguiente documentación:

1. Informes de Corporación entre los años 1976-2011 en la que Coutín Rodríguez aparece ocupando varias posiciones administrativas, y como parte de la Junta de Directores de PUI.[32]
2. Declaración Jurada de Coutín Rodríguez del 16 de agosto de 2022.[33]
3. La *"Sentencia Parcial y Orden"* del TPI-SJ del 5 de diciembre de 2018.[34]
4. Testamento Abierto de Pérez Labiosa, escritura número quince (15) del 22 de septiembre de 2016, ante el notario Rubén H. Meléndez Lugo.[35]

En respuesta, el 11 de octubre de 2022, la parte apelada presentó su oposición a la intervención de Suzette Coutín en los procedimientos pertinentes a la reconvención, y a la sentencia sumaria solicitada por el apelante.[36] Sin embargo, unas semanas más tarde, la parte apelada presentó su *"Moción en Solicitud de Sentencia Sumaria"*,[37] el 7 de noviembre de 2022, la cual fue enmendada y sometida nuevamente el 8 de noviembre de 2022.[38]

En su petitorio, PUI y la Sucesión Pérez Labiosa arguyen que el asunto litigioso que debe resolver el Foro Apelado es si Coutín Rodríguez está obligado a restituirle a PUI la cantidad de diez (10) millones de dólares, los cuales recibió en concepto de dividendos, sin ser accionista de la corporación – en armonía con lo resuelto en la *"Sentencia Parcial y Orden"* del TPI-SJ del 5 de diciembre de 2018.[39] Además, expuso los siguientes hechos que, a su juicio, no están en controversia:

---

[31] Apéndice del recurso, pág. 140.
[32] *Id.* págs. 161-307.
[33] *Id.* pág. 308.
[34] *Id.* pág. 312.
[35] *Id.* pág. 349.
[36] *Id.* págs. 361 y 367.
[37] *Id.* pág. 407.
[38] *Id.* pág. 446.
[39] *Id.* pág. 448.

1. El 29 de agosto de 1974, con fecha de registro de 14 de septiembre de 1974, la Sra. Pérez, Alida Binet de Rodriguez y Lilliam Bonnet de Rexach incorporaron y registraron la corporación Pirette Draperies, Inc. (PUl) como una corporación, con autoridad para emitir hasta 250,000 acciones. *(Ver Sentencia Parcial, Determinación de Hechos núm. 1 y 2).*[40]

2. Del total de acciones autorizadas a emitir, PUl emitió un total de 50,000 acciones, las cuales, en su origen, se distribuyeron de la siguiente forma: 30,000 a favor de la Sra. Pérez Labiosa y 20,000 a favor de Lilliam Bonnet de Rexach. *(Determinación de Hechos núm. 3).*[41]

3. En el año 1979 la Sra. Lillian Bonnet cedió y/o donó sus 20,000 acciones a la Sra. Emma Perez Labiosa, por lo que desde entonces la Sra. Pérez Labiosa advino a ser dueña de la totalidad de las 50,000 en circulación de PUI. *(Ver Determinación de Hechos núm. 67).*[42]

4. El 10 de abril de 1981, el demandado Randy Coutín y la Sra. Emma Pérez Labiosa contrajeron matrimonio bajo el régimen de sociedad legal de gananciales.

5. El 31 de agosto de 1988 se incorporó y registró DCPI, cuya única accionista la es PUI. *(Determinación de Hechos núm. 6).*[43]

6. El 10 de diciembre de 2013, el Tribunal de San Juan emitió una Orden de Protección Ex Parte a favor de la Sra. Emma Pérez Labiosa, mediante la cual la restituyó en sus funciones como Presidenta de ambas corporaciones, caso OPA-2013-008984. En esa misma fecha la Junta de Directores de PUI y DCPI emitieron Resoluciones, removiendo al Sr. Coutín de sus posiciones en las corporaciones. *(Determinaciones de Hechos 9, 10, 55, y pág. 36).*[44]

7. Al emitir dicha Orden de Protección Ex Parte, el Tribunal de Primera Instancia determinó que la Sra. Emma Pérez Labiosa era víctima de maltrato y que había sido desplazada del negocio que ella fundó.[45]

---

[40] Apéndice del recurso, págs. 316-317.
[41] *Id.* pág. 317.
[42] *Id.* pág. 327.
[43] *Id.* pág. 317.
[44] *Id.* págs. 317, 323 y 347.
[45] *Id.* pág. 399.

8. La Orden de Protección Ex Parte emitida se fundamentó en las siguientes determinaciones del Tribunal:

Doña Emma Pérez Labiosa solicita una Orden de Protección contra el Sr. Randy Coutín Rodríguez, su esposo por 33 años. La Sra. Emma Pérez alega ser víctima de maltrato psicológico por parte del Sr. Coutín. El Sr. Coutín la insulta y la maltrata constantemente frente a su familia y sus empleados. El Sr. Coutín ha amenazado a la peticionaria con un cuchillo indicando que el matrimonio entre ellos "acabaría como el rosario de la aurora". En adición el peticionado está disponiendo de los bienes del matrimonio haciendo transferencias monetarias a bancos fuera del país y comprando oro. El Sr. Coutín ha desplazado a la Sra. Emma Pérez de la administración del negocio familiar que ella fundó. La peticionaria se siente mal, humillada, amenazada y teme por su vida, ya que el peticionado posee un arma de fuego. La Sra. Emma Pérez recibe tratamiento psicológico debido a la situación conyugal hace varios meses. Se concede la petición de Orden de Protección Ex parte contra el Sr. Randy Coutín Rodriguez. Se ordena el desalojo del Sr. Coutín de la residencia conyugal y el desarme del mismo. Se le ordena a todos los bancos o instituciones financieras a cumplir con lo aquí dispuesto en cuanto a los bienes de la Sociedad Legal de Gananciales. Exhibit 2, parte demandada. *(Ver Sentencia Parcial de 5 de diciembre de 2018, Determinación de Hechos núm. 57).*[46]

9. El 10 de diciembre de 2013, el Sr. Coutín presentó una moción por derecho propio en el mismo caso OPA-2013-008984, en la que indicó al tribunal que él era el dueño del negocio que se llama PUI; que su esposa no tenía ninguna injerencia en el mismo y que él era el fundador del negocio. *(Ver Determinación de Hechos núm. 56).*[47]

10. De la prueba surgió que no fue hasta que la Sra. Pérez pasó por el proceso de solicitar la Orden de Protección y con la ayuda e intervención de sicólogos obtenerla a su favor, que cesó la violencia en su contra. Una vez restablecida en sus derechos, pudo ejercer las

---

[46] Apéndice del recurso, págs. 323 y 393.
[47] *Id.* págs. 323 y 406.

funciones y poderes que le habían sido usurpados por el demandante. Una vez al frente de sus corporaciones nuevamente, y haciendo uso de sus prerrogativas, la Sra. Pérez Labiosa citó y se celebró una reunión de emergencia de las Juntas de Directores de Pirette Uniforms, Inc. y de Drapery Creations of Pirette, Inc. en las que se resolvió destituir al demandante Sr. Randy Coutín Rodríguez de todas las funciones ejecutivas y administrativas que tenía dentro de ambas corporaciones. *(Ver Sentencia Parcial, Determinación núm. 57).*[48]

11. Luego de destituir al demandante de sus posiciones oficiales fue que la Sra. Pérez recuperó los libros, registros y documentos corporativos que el demandante tenía bajo su control exclusivo. Con dicha información advino en conocimiento de los documentos fraudulentos que representaban a Coutín como dueño en un 50% de las corporaciones. Por lo tanto, habiendo levantado la Sra. Pérez su reclamo de nulidad, de los documentos presentados por el Sr. Coutín ante las diferentes agencias de gobierno, dentro del término de 4 años dispuesto por el Código Civil de Puerto Rico que tenía para reclamar la nulidad de los actos realizados y consentimiento que prestó bajo presión, amenazas, humillaciones, tretas. y la intimidación a la que fue sometida por el Sr. Coutín, no había prescrito el término que tenía para impugnar los documentos. *(Ver Sentencia Parcial, Determinación núm. 5).*[49]

12. Mientras el Sr. Coutín administró a PUl, no se celebraban reuniones para la toma de decisiones sobre la corporación y que todo se manejaba mediante órdenes que impartía éste. *(Ver Sentencia Parcial, Determinación núm. 82).*[50]

13. Una vez se expidió la Orden de Protección a su favor y recupera el negocio, la Sra. Pérez comenzó a buscar los libros corporativos para conocer el estado de la corporación. Al encontrarlos, los llevó a sus abogados para que éstos analizaran y le dijeran lo que estaba pasando. *(Ver Sentencia Parcial, Determinación núm. 123).*[51]

---

[48] Apéndice del recurso, pág. 323.
[49] *Id.* pág. 317.
[50] *Id.* pág. 329.
[51] *Id.* págs. 334-335.

14. Una vez la Sra. Pérez Labiosa pudo ejercer nuevamente sus funciones como Presidenta de PUl, contrató los servicios del auditor Rubén Rosario Maldonado, para que llevara a cabo una investigación sobre los dineros que obtuvo el demandado Randy Coutín de dicha corporación en concepto de dividendos. *(Ver Anejo 1, Curriculum Vitae).*[52]

15. PUI Y DCPI cuentan con una firma de contables externa, Diaz Bergnes & Cid, que se utiliza desde sus inicios para auditar las cuentas, radicar planillas y someter los documentos necesarios ante las distintas agencias de gobierno, y la única persona que se reunía con los contables era el Sr. Coutín. *(Ver Sentencia Parcial, Determinación Núm. 93).*[53]

16. La contable de PUI, Sra. Ilaynete Coutín Pérez logró ver los libros y/o los documentos que obraban en éstos después de emitida la Orden de Protección a favor de la Sra. Pérez del 10 de diciembre de 2013, luego que se destituyó al Sr. Coutín de sus posiciones ejecutivas en las corporaciones y los encontrara la Sra. Pérez. *(Ver Sentencia Parcial, Determinación Núm. 81).*[54]

17. La Sra. Coutín Pérez tiene conocimiento personal de que los libros corporativos fueron entregados a los abogados de las corporaciones y de la Sra. Pérez tan pronto fueron encontrados por la Sra. Pérez, luego de que asumiera el control de su negocio en el año 2013. *(Ver Sentencia Parcial, Determinación núm. 94).*[55]

18. El día 2 de enero de 2014 el auditor Rubén Rosario remitió a PUI un informe sobre los dividendos cobrados de PUI por el Sr. Randy Coutín, basado en los récords de la corporación y de los libros contables de la entidad, en el cual indicó:

    - 1. El detalle de los pagos para los años del 1987 y 1988 al 1996 fueron suplidos por los Auditores Independientes de la Corporación DIAZ, BERGNES & CID, CERTIFIED PUBLIC ACOUNTANTS, basados en "Independent Auditors' Reports" sometidos a la Corporacion cubriendo el periodo de 1 de septiembre al 31 de agosto, año fiscal de la Corporación.

---

[52] Apéndice del recurso, pág. 466.
[53] *Id.* pág. 330.
[54] *Id.* pág. 328.
[55] *Id.* pág. 330.

Los años de 1997 a 2013 provienen de mi examen de los registros contables de la Corporación.

- 2. No encontramos en los récords de la Corporación evidencia de Minutas de reuniones de la Junta de Directores en las cuales declararan y aprobaran los Dividendos. Los Estatutos de la Corporación no contienen los procesos a seguir para estos pagos.

- 3. La Ley General de Corporaciones de 1995 establece en el Artículo 5.18: Dividendos; pago de dividendos ... la facultad de toda Corporación de declarar y pagar dividendos sobre las acciones de capital corporativo .... A su vez, el Artículo 5.21 Declaración y pago de dividendos ... dispone que ninguna corporación pagará dividendos excepto según lo dispuesto en esta Ley (énfasis suplido). Basado en lo expuesto cuestionamos si los referidos "dividendos" fueron hechos acorde a la Ley. Recomendamos que este asunto sea referido a los Asesores Legales de la Corporación. *(Véase Anejo 2, Informe a PUI del auditor).*[56]

19. La Orden de Protección fue reiterada y extendida por el término de 6 meses a favor de Emma Pérez Labiosa, luego de la celebración de la correspondiente vista en los méritos ante el Tribunal Municipal de Guaynabo. El Tribunal concluyó que "la peticionaria es víctima de violencia doméstica". *(Ver Determinación de Hechos Núm. 58).*[57]

20. La Orden de Protección emitida por el tribunal en el caso OPA-2013-008984 fue apelada por el Sr. Coutín, no obstante, el recurso se tornó académico por el transcurso del tiempo antes de que el Tribunal de Apelaciones emitiera cualquier determinación al respecto. *(Ver Determinación de Hechos Núm. 60).*[58]

21. El 26 de febrero de 2014 se dictó Sentencia en la cual el tribunal declaró "con lugar" la demanda de divorcio por la causal de ruptura irreparable, disolviendo el vínculo matrimonial entre el Sr. Coutín y la Sra. Pérez. *(Ver Determinación de Hechos Núm. 11).*[59]

22. La Sra. Pérez Labiosa tenía tres hijas antes de casarse con Coutín, las cuales fueron adoptadas por éste y

---

[56] Apéndice del recurso, pág. 467.
[57] *Id.* págs. 324 y 399.
[58] *Id.* pág. 325.
[59] *Id.* pág. 317.

luego del matrimonio las partes tuvieron una hija en común, por lo que hoy en día hijas de éstos: Lissette, llyannette, Jeannette y Suzette Marie Coutín Pérez, todas son mayores de edad. *(Ver Determinación de Hechos Núm. 15).*[60]

23. El 2 de julio de 2014 el demandado Randy Coutín presentó la Demanda que da inicio al caso de epígrafe, reclamando ser accionista de PUI, entre otras cosas. Junto con la Demanda, también radicó una Solicitud de Remedios Provisionales.[61]

24. En la Solicitud de Remedios Provisionales que radicó junto con su Demanda, el Sr. Coutín alegó, entre otras cosas, que mediante la Orden de Protección que emitiera el tribunal a favor de la Sra. Pérez fue colocado en una situación económica precaria y que fue obligado a recurrir a la ayuda de amistades y familiares para poder sufragar los gastos necesarios para su sustento *(Ver Determinación de Hechos Núm. 61).*[62]

25. El 3 de septiembre de 2014, la codemandada Pérez Labiosa presentó la Contestación a la Demanda y una Reconvención, en la cual negó que el Sr. Coutín fuera accionista de PUI y DCPI. En la Reconvención, la Sra. Pérez arguyó que el demandante, mediante un patrón de engaños y amenazas, la desplazó de sus poderes y funciones en las corporaciones y sustrajo ilegalmente cuantiosas sumas de dinero de las arcas corporativas... Las codemandadas PUI, DCPI, y las juntas de directores de ambas corporaciones también le presentaron su Contestación a la Demanda y una Reconvención... El día 7 de noviembre de 2014 el Sr. Coutín presentó una Contestación a Reconvenciones... *(Véase la Página 2 de la Sentencia Parcial y Orden).*[63]

26. El 30 de octubre de 2015 se celebró una vista sobre el estado de los procedimientos en la cual los abogados acordaron que la controversia esencial y principal, era el hecho de si el demandante era o no accionista de las corporaciones demandadas. *(Véase la Página 2 de la Sentencia Parcial y Orden).*[64]

---

[60] Apéndice del recurso, pág. 318.
[61] *Id.* pág. 1.
[62] *Id.* págs. 20 y 325.
[63] *Id.* pág. 313.
[64] *Id.*

27. Durante la deposición tomada al demandado Randy Coutín el día 4 de noviembre de 2015, este admitió que recibió todos los dividendos de PUI desde que se casó, hasta que se divorció de la Sra. Emma Pérez Labiosa. Específicamente, el Sr. Coutín bajo juramento declaró:

"Emma toda la vida firmó en todas las cuentas, desde que nos casamos, que yo era el que cogía los dividendos desde el principio, hasta que nos divorciamos...".

*(Véase Anejo 3, página 51, línea 22, hasta línea 25 de la deposición tomada al demandado Randy Coutín el día 4 de noviembre de 2015).[65]*

28. Durante la deposición tomada al demandado Randy Coutín el día 4 de noviembre de 2015, en las páginas 54 a 55 de la deposición, este admitió que recibió todos los dividendos porque [él] era el dueño del 50% de la compañía. Específicamente, el Sr. Coutín bajo juramento declaró:

"Al principio yo era el que lo recibía todo desde que yo.... mire, yo le compré. Mire, yo le compré a ella, para allá para finales de los años '70, por ahí más o menos, y yo renuncié a mi trabajo en Sears y me fui a trabajar con ella. Porque yo era el dueño del cincuenta porciento y se lo voy a probar en corte. Por más que usted me trate de tergiversar la.... Tergiversar la cosa, no es así. Yo soy dueño del cincuenta porciento porque le compré y por eso renuncié a mi trabajo en Sears.

Y me fui a trabajar allí y cogía los dividendos."

*(Véase Anejo 4, página 54, línea 21, hasta la página 55, línea 7 de la deposición tomada al demandado Randy Coutín el día 4 de noviembre de 2015).[66]*

29. Luego de varios trámites procesales, la parte demandante presentó una moción de sentencia sumaria la cual fue atendida y resuelta por el Tribunal según surge de la Resolución de 22 de mayo de 2017, en la que se declaró no ha lugar a la moción sumaria, luego de determinar que existían controversias medulares sobre la condición de accionista o no de Coutín con respecto a las corporaciones demandadas. El demandado acudió al tribunal de Apelaciones,

---

[65] Apéndice del recurso, pág. 432.
[66] *Id*. pág. 433.

quien confirmó el dictamen en el caso núm. KLCE201701310. *(Ver Resolución de 22 de mayo de 2017, y la página 2 de la Sentencia).*

30. El Sr. Randy Coutín admitió que al momento en que presentó la Solicitud de Remedios Provisionales en el presente caso, tenía acceso a una cuenta en la institución financiera UBS de Puerto Rico en la que tenía depositados, accesibles y disponibles una suma de por lo menos $800,000.00. Por tanto, su alegación para la solicitud de remedios provisionales resultó no ser cierta. *(Ver Sentencia Parcial, determinación de Hechos núm. 62).*[67]

31. Durante la deposición tomada al demandado Randy Coutín el día 4 de noviembre de 2015, en las páginas 54 a 55 de la deposición, este admitió que no le dio participación a la Sra. Emma Pérez de los dineros que retiró al cerrar la cuenta que tenía exclusivamente a su nombre en la casa de corretaje UBS de Puerto Rico ($500 K), y que la Sra. Emma Pérez no firmaba en dicha cuenta.[68]

32. Específicamente se le preguntó al Sr. Coutín: "¿Pero no le dio la mitad del cheque cuando retiró los quinientos mil?"

La respuesta del demandado fue:

"Bueno, ahora no porque el problema que hubo que ya estaba divorciada. Estábamos divorciados y yo cogí el cheque y se lo mandé a la hija mía."

*(Véase Anejo 5, página 52, línea 12, hasta la línea 16 de la deposición tomada al demandado Randy Coutín el día 4 de noviembre de 2015).*[69]

33. Durante la deposición tomada al demandado Randy Coutín el día 4 de noviembre de 2015, este admitió que la Sra. Pérez Labiosa no era firmante en la cuenta de UBS. Específicamente, se le preguntó al demandado:

P: ¿La firma de ella no podía, no estaba en la cuenta, verdad que no?

R: Sí, está en la cuenta

P: ¿en la de UBS?

R: En la de UBS, en la de UBS no.

---

[67] Apéndice del recurso, pág. 325-326.
[68] *Id.* págs. 433-434.
[69] *Id.* pág. 435.

*(Véase Anejo 6, página 53, línea 13, hasta la línea 17 de la deposición tomada al demandado Randy Coutín el día 4 de noviembre de 2015).*[70]

34. Tanto en su Demanda, como en la Solicitud de Remedios Provisionales presentadas por el demandado Coutín Rodríguez, este declaró que recibía el 100% de los dividendos de PUI. *(Véase Alegaciones de la Demanda, y número 2 de la Solicitud de Remedios)*[71].

35. Para intentar demostrar que era accionista de PUI, durante la vista evidenciaria el Sr. Coutín presentó varios formularios 480.6B del Departamento de Hacienda, y declaró que recibió de PUI en concepto de dividendos, las sumas $81,540 en el año 2011, $599,864 para el 2009, $571,031.56 en el 2008, $574,147 en el 2007, $17,316 en el 2006, y $111,111 en el 2004. *(Ver Sentencia Parcial, Determinación de Hechos núm. 16).*[72]

36. Las sumas que se reflejan de la auditoría llevada a cabo establecen que las sumas verdaderas recibidas por el demandado Coutín para dichos años fueron: $735,000 en el 2011; $500,000 en el 2009; $435,000 en el 2008; $950,000 en el 2007; y $240,000 en el año 2006. *(Véase Anejo 2-B, detalle de cheques cobrados por Randy Coutín de PUI).*[73]

37. Sobre los documentos de declaración de dividendos que se admitieron en evidencia durante el testimonio del Sr. Coutín, la Sra. Pérez declaró que sabía que el Sr. Coutín se adjudicaba dinero en concepto de dividendos y que el demandante le representaba que estaba ahorrando para la familia. Declaró que al cumplir sus 70 años, le preguntó al Sr. Coutín ¿cuánto dinero tenía ahorrado? y que éste le contestó que ella no tenía ni un solo centavo ahorrado y que el dinero que tenía ahorrado era de él. *(Ver Determinación núm. 129).*[74]

38. La Sra. Pérez declaró que en aquel momento no sabía cuánto dinero el Sr. Coutín había retirado de la corporación, pero que ahora sabía que el Sr. Coutín había sacado unos $10 millones de dólares de las

---

[70] Apéndice del recurso, pág. 436.
[71] *Id.* págs. 3 y 20.
[72] *Id.* pág. 318
[73] *Id.* págs. 468-471.
[74] *Id.* pág. 336.

arcas corporativas. La Sra. Pérez desconoce el destino de ese dinero. *(Ver Determinación de Hechos Núm.130).*[75]

39. Según los hallazgos del Auditor contratado por PUI, mientras el demandado Randy Coutín estuvo como administrador de PUI, hasta el momento en que fue destituido en el año 2013, recibió ilegalmente en concepto de dividendos las siguientes sumas:

Del año 1987 al año 1996 ($1,933,000 M)

Del año 1997 al año 2013 ($8,324,000 M)

Total $10,257,000 M

*(Véase el Anejo 2-B, detalle de los cheques cobrados por el demandado de PUI).*[76]

40. Copia de los cheques cobrados por Randy Coutín en concepto de dividendos le fue entregada al demandado junto con el listado de los mismos, durante la deposición que le fuera tomada el día 5 de noviembre de 2015, y que se admitieron como Exhibits número 43 y 44 de la deposición.

41. Específicamente, en relación a dichos cheques, al demandado se le preguntó:

P: Don Randy, resuelto el asunto de las copias de los cheques le pregunto, ¿si usted tuvo oportunidad de ver el listado como tal de los cheques, se lo vamos a proveer por... perdón, el bloque de cheques físicamente?

R: Sí.

*(Ver Anejo 7, página 142, línea 20, hasta la línea 25 de dicha deposición).*[77]

42. Más adelante en la misma deposición del 5 de noviembre de 2015, en la página 143, de la línea 10 a la línea 19, al demandado se le preguntó si había corroborado que los cheques que se le mostraron y que fueran emitidos a su nombre, en su talonario indican en concepto de qué fueron emitidos. Específicamente se le preguntó:

P: Muy bien. Le voy a pedir por favor, ¿si puede decir o corroborar la información que ha vertido este abogado para récord, en cuanto a que los cheques en su recibo o talonario indican por concepto de qué fueron?

---

[75] Apéndice del recurso, pág. 336.
[76] *Id*. págs. 468-471.
[77] *Id*. pág. 484.

R: De dividendos como accionista del cincuenta por ciento de la corporación.

P: Muy bien. La pregunta es… como accionista del cincuenta por ciento de la corporación, ¿eso es lo que usted ha indicado reiteradamente?

R: Sí.

*(Ver Anejo 8, página 143, línea 10, hasta línea 19 de la deposición).[78]*

43. Durante la deposición tomada al Sr. Randy Coutín el día 5 de noviembre de 2015, al demandado le fueron entregadas las copias de los cheques de PUI emitidos a su nombre que estaban en los archivos de la compañía y copia del listado de cheques que cobró de PUI en concepto de dividendos.

44. La Sra. Pérez negó categóricamente lo declarado por el Sr. Coutín en cuanto a que tuvieron unas negociaciones para finales del año 1976 en relación a la compra del 50% de las acciones de PUl y enfatizó que apenas conocía al Sr. Coutín para dicha fecha. El tribunal le dio entera credibilidad al testimonio de la Sra. Pérez, en unión a la totalidad de la prueba y a la falta de credibilidad de Randy Coutín. *(Ver Sentencia, Determinación Núm. 107).[79]*

45. La prueba durante la vista evidenciaria estableció con suficiente confiabilidad que luego de su matrimonio con la Sra. Pérez Labiosa, el Sr. Coutín se fue apoderando mediante violencia sicológica e intimidación del absoluto control de las corporaciones. Se valió de tretas, engaños, violencia e intimidación para procurar que la Sra. Pérez firmara diferentes tipos de documentos que luego el Sr. Coutín presentaba ante agencias gubernamentales o entidades representando falsamente ser accionista de PUI. Claramente se estableció durante la celebración de la vista evidenciaria que el consentimiento prestado por la Sra. Pérez para la firma de dichos documentos y cheques, si alguno, estuvo viciado. Por lo tanto, quedó demostrado, el tribunal determinó que dichos documentos estaban revestidos de nulidad.

*(Véase Sentencia Parcial, en la página 34).[80]*

---

[78] Apéndice del recurso, pág. 485.

[79] *Id*. pág. 332.

[80] *Id*. pág. 345.

46. El demandante llegó al punto de firmar y poner fecha de 1977 al Certificado de Acciones Número 1 de PUI, que obtuvo del "Kit Corporativo" comprado en 1988 como parte de la reorganización que llevaba a cabo y dar la apariencia de que era accionista desde el año 1977. Conforme se indicara previamente, no es posible que dicho certificado de 50,000 acciones fuera emitido en 1977, toda vez que a esa fecha la Sra. Pérez sólo era dueña de 30,000 acciones y no advino a ser titular del total de las acciones autorizadas por PUI hasta el año 1979. *(Véase Sentencia Parcial, en la página 35).*[81]

47. El 5 de diciembre de 2018, notificada el 6 de diciembre de 2018, el TPI emitió la Sentencia Parcial y Orden, en la cual: (i) determinó que Randy Coutín no es, y nunca ha sido accionista de las corporaciones co-demandadas; (ii) declaró No Ha Lugar la demanda en su totalidad y ordenó su archivo con perjuicio, y; (iii) determinó que Randy Coutín actuó con temeridad al presentar un pleito reclamando la titularidad de acciones y le impuso $5,000.00 en honorarios a favor de cada una de las partes demandadas-recurridas, más las correspondientes costas del pleito.[82]

48. El 21 de diciembre de 2019 Randy Coutín presentó una Moción de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales.

49. El 8 de enero de 2019, notificada y archivada en autos el 9 de enero de 2019, el TPI emitió Resolución mediante la cual el Honorable tribunal denegó la Moción de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales presentada por Randy Coutín en el presente caso.

50. Ante dicha determinación, el 8 de febrero de 2019 Randy Coutín presentó un Recurso de Apelación ante el Tribunal de Apelaciones de 2019 junto con la reproducción de la prueba oral, Caso Núm. KLAN201900131, sobre el cual se solicita se tome conocimiento judicial.[83]

51. El 11 de marzo de 2019 la parte Reconvencionista presentó su Oposición al Recurso de Apelación presentado por Randy Coutín y tras varios trámites

---

[81] Apéndice del recurso, pág. 346.
[82] *Id*. pág. 312.
[83] *Id*. pág. 82.

procesales, el 30 de diciembre de 2019 el Tribunal de Apelaciones emitió y notificó Sentencia, mediante la cual confirmó el dictamen emitido por el TPI.[84]

52. La Sra. Pérez Labiosa (QEPD) falleció el día 6 de noviembre de 2019. La sucesión está representada por su Albacea Testamentaria. Sra. Irma Pérez Labiosa, y está compuesta por las 4 hijas biológicas de Doña Emma, a saber: Lyzette Alicia, Ilaynette, Jeannette, Suzette Marie, todas de apellidos Coutín Pérez.

53. No bien se enteró el demandado del fallecimiento de la Sra. Emma Pérez Labiosa el día 6 de noviembre de 2019, al día siguiente, el demandado se dio a la tarea de enviar a sus hijas un poder o documento titulado "POWER OF ATTORNEY", mediante el cual las herederas le conferían autoridad para tomar posesión y control de PUl y DCPI. *(Véase Anejo 9, documento enviado a las herederas de Doña Emma Pérez Labiosa).*[85]

54. El 14 de enero de 2020 Randy Coutín presentó una Moción de Reconsideración ante lo cual el 24 de enero de 2020, notificada el 27 de enero de 2020, el Tribunal de Apelaciones emitió Resolución declarando la misma "No Ha Lugar". *(Ver Anejo 10).*[86]

55. Inconforme con la determinación del Tribunal de Apelaciones, el 25 de febrero de 2020 el demandado Randy Coutín presentó un recurso de Certiorari ante el Tribunal Supremo, caso Núm. CC-2020-0123, quien el día 1 de mayo de 2020, notificada el 15 de julio de 2020, denegó la expedición del recurso. El día 28 de julio de 2020 el Reconvenido solicitó reconsideración, la cual fue declarada "No Ha Lugar" el día 9 de octubre de 2020.[87]

56. Una segunda solicitud de Reconsideración fue radicada el 20 de octubre de 2020, la cual el día 13 de noviembre de 2020 también fue declarada "No Ha Lugar", junto con una Orden que indica "Aténgase a lo resuelto por este Tribunal". *(Véase Anejo 11).*[88]

---

[84] Apéndice del recurso, pág. 82.
[85] *Id*. págs. 486-487.
[86] *Id*. pág. 488.
[87] *Id*. pág. 489.
[88] *Id*. pág. 490.

Los hechos incontrovertidos expuestos por la parte apelada en la precitada moción de sentencia sumaria fueron sustentados por los siguientes documentos:

1. Curriculum Vitae de Rubén Rosario Maldonado (Auditor).[89]
2. Informe de auditoría de Rubén Rosario Maldonado.[90]
3. Informe de Dividendos de PUI durante los años 1997-2013.[91]
4. Copia de los cheques expedidos a favor de Coutín Rodríguez por parte de PUI.[92]
5. Deposición de Coutín Rodríguez del 4 de noviembre de 2015.[93]
6. Borrador de "Power of Attorney" enviado a Ilaynette Coutín Pérez, para que autorizara a Coutín Rodríguez a tomar acción, con relación a PUI, en su nombre.[94]
7. Resoluciones del Tribunal de Apelaciones y el Tribunal Supremo de Puerto Rico.[95]
8. Declaración jurada de Coutín Rodríguez del 16 de agosto de 2022.[96]

Posterior a esta súplica de la parte apelada, el TPI-SJ concluyó que no era necesario celebrar una vista en su fondo, y emitió una *"Sentencia"* el 11 de abril de 2023.[97] En su dictamen, el Foro Primario declaró "Ha Lugar" la solicitud de sentencia sumaria de PUI y la Sucesión Pérez Labiosa. En consecuencia, ordenó a Coutín Rodríguez a pagar la cantidad de $10,257,00 de dólares a favor de PUI, en concepto de daños causados por su falta al deber de fiducia y lealtad, y por haber devengado ilegalmente los dividendos de las corporaciones demandadas, durante los años 1997-2013.

El TPI-SJ fundamentó su decisión, en esencia, invocando las conclusiones a las que llegó el Foro Apelado en su sentencia parcial del 5 de diciembre de 2018, reiterando así que el apelante nunca ha sido accionista de PUI.[98] Expuso en su dictamen que el apelante,

---

[89] Apéndice del recurso, pág. 466.
[90] *Id.* pág. 467.
[91] *Id.* págs. 468-471.
[92] *Id.* págs. 472-478.
[93] *Id.* págs. 479-485.
[94] *Id.* pág. 487.
[95] *Id.* págs. 488-490.
[96] *Id.* pág. 491.
[97] *Id.* pág. 494.
[98] *Id.* pág. 513.

mediante intimidación, tretas y engaños, procuró la firma de Pérez Labiosa en los documentos de PUI, destacando un certificado de acciones, con el cual invocó ser accionista de la corporación en cuestión.[99] Destacó que, por estos hechos, el apelante cobró los dividendos de PUI, sabiendo que no era acreedor de ellos.

Por otro lado, determinó que, en el año 1979, cuando Bonnet de Rexach cedió su participación a Pérez Labiosa, esta última se convirtió en la única titular de las acciones de PUI.[100] Considerando que el matrimonio entre Pérez Labiosa y Coutín Rodríguez se configuró en el año 1981, el Foro Primario no avaló la teoría de que el apelante era accionista en 50% de PUI, previo a esa fecha.[101]

Inconforme, el apelante presentó una *"Moción de Reconsideración"* al TPI-SJ el 26 de abril de 2023.[102] A esta moción se opuso la apelada el 3 de julio de 2023.[103] Finalmente, el 8 de agosto de 2023, el TPI-SJ denegó la solicitud de reconsideración de Coutín Rodríguez.[104]

Así las cosas, el 7 de septiembre de 2023, el apelante recurrió ante esta Curia mediante un recurso de *"Apelación"*. Mediante *"Resolución"* del 11 de septiembre de 2023, este Tribunal ordenó a Coutín Rodríguez a acreditar la notificación de su recurso a la parte apelada, conforme a la Regla 13 (B) y Regla 14 del Reglamento del Tribunal de Apelaciones. Mediante *"Moción en Cumplimiento de Orden"* el 18 de septiembre de 2023, el apelante así lo hizo. Luego de una prórroga, la parte apelada radicó su *"Oposición a Recurso de Apelación"* el 24 de octubre de 2023. Perfeccionado así el recurso ante nos, procedemos a resolver.

---

[99] Apéndice del recurso, pág. 513.
[100] *Id.* pág, 514.
[101] *Id.*
[102] *Id.* pág. 517.
[103] *Id.* pág. 538.
[104] *Id.* pág. 539.

**II.**

### A. Apelación

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

### B. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR ___ (2024); *Birriel Colón v. Econo y otro,* 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 610 (2023); *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335, 350 (2023); *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 471 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Cruz, López v. Casa Bella y otros*, supra; *Oriental Bank v. Caballero García,* supra, pág. 678; *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. Reglas 36.1 y 36.2 de Procedimiento Civil, supra.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 979; *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. Id.

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, supra; *Oriental Bank v. Caballero García,* supra, pág. 679; *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*,* pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. Id. Es decir, el hecho de no oponer a un petitorio sumario no implica que este necesariamente proceda, sin embargo, si no se demuestra que existen controversias sustanciales sobre los hechos materiales, nada impide al foro sentenciador de dictar sentencia sumaria. *Ramos Pérez v. Univisión,* supra, pág. 215.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, supra. Id. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. Id. De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, supra, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole,*

164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *E.L.A. v. Cole,* supra, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros,* supra; *Acevedo y otros v. Depto. Hacienda y otros,* supra; *Segarra Rivera v. Int'l. Shipping et al.,* supra. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". Id. No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros,* supra, pág. 472.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

[E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

*Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *Cruz, López v. Casa Bella y otros*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho.

### C. El cobro de lo indebido

Con orígenes en el remoto derecho romano, la concepción del cobro o pago de lo indebido fue incorporado en el Código Civil Español, que a su vez ilustró el nuestro. *Sepúlveda v. Depto. de Salud*, 145 DPR 560, 566 (1998). El Artículo 1785 del ahora derogado Código Civil de 1930, 31 LPRA ant. sec. 5121, establecía que se configura el cobro de lo indebido "[c]uando se recibe una cosa

que no había derecho a cobrar, y que por error ha sido indebidamente entregada, surge la obligación de restituirla".[105]

Mientras, el derogado Artículo 1796 del mismo Código, supra, ant. sec. 5122, establecía que "[e]l que acepta un pago indebido, si hubiera procedido de mala fe, deberá abonar el interés legal cuando se trate de capitales, o los frutos percibidos o debido percibir cuando la cosa recibida los produjera [...]".

Ahora bien, en el caso *E.L.A. v. Crespo Torres*, 180 DPR 776 (2011), nuestro más Alto Foro discutió el desarrollo de la doctrina del cobro de lo indebido. Desde el año 1914, se había hecho la distinción del error de hecho y el error de derecho en cuanto al cobro de lo indebido. Así, citando a *Sepúlveda v. Depto. de Salud*, supra, pág. 568, define como un error de Derecho como:

> [A]quel en el que incurre quien actúa sin ajustarse a lo dispuesto por una norma jurídica vigente. En el contexto del cobro de lo indebido comete error de derecho quien realiza un pago bajo la creencia de que el mismo le es exigible en Derecho, bien por desconocimiento de la norma que lo descarga del pago, bien por una interpretación errónea del Derecho aplicable.

Adviértase que, antes del caso *E.L.A. v. Crespo*, supra, la doctrina del cobro de lo indebido se limitaba a instancias de pago que surgieran de un error de hecho, mas no así de un error de derecho. *Pagán Santiago v. A.S.R.*, 185 DPR 341, 368 (2012). Por lo tanto, cuando tales reclamaciones estaban predicadas en un error de derecho, estas no procedían. *Pagán Santiago v. A.S.R.*, supra; *Aulet v. Depto. Servicios Sociales*, 129 DPR 1, 48 (1991) citando a *A.C.A.A. v. Bird Piñero*, 115 DPR 463, 467 (1984).

Ahora bien, en *E.L.A. v. Crespo*, supra, pág. 799, nuestro Tribunal Supremo concluyó, por primera vez, que "cuando se recibe

---

[105] El 28 de noviembre de 2020, entró en vigor el nuevo Código Civil de Puerto Rico, Ley Núm. 55-2020. Sin embargo, los hechos del caso de epígrafe ocurrieron previo a la fecha de vigencia del citado estatuto, por lo que haremos referencia y esbozaremos el derecho a la luz del derogado Código.

alguna cosa que no había derecho a cobrar y que por error ha sido entregada, sea por error de hecho o derecho, surge el deber de restituirlo". Al así resolver, nuestro más Alto Foro creó una nueva causa de acción - a saber, una acción por cobro de lo indebido basada en un error de derecho – que se aplicaría "de manera prospectiva". *E.L.A. v. Crespo*, supra, págs. 797, 799.

Ahora bien, al analizar si se configura el cobro de lo indebido, nuestra Alta Curia nos ha señalado una serie de requisitos, a saber: 1) el pago debe hacerse con la intención de extinguir una deuda; 2) que no exista obligación jurídica entre el que paga y cobra y 3) ***que el mismo se haya hecho por error y no por mera liberalidad u otro concepto***. *E.L.A. v. Crespo*, supra, págs. 793-794.

### D. El pago de dividendos

Un dividendo es la retribución a la inversión otorgada por una compañía en proporción a la cantidad de acciones poseídas. Una vez otorgados los dividendos y estos distribuidos, ***se consideran ingreso de sus accionistas***. *The Coca-Cola Co.* v. *Mun. De Carolina,* 136 DPR 216, 220 (1994); *Serrallés et al.* v. *Gallardo, Tesorero Interino*, 32 D.P.R. 706, 715 (1924).

Tanto la jurisprudencia, como la Ley General de Corporaciones, establecen que los dividendos son beneficios de los que únicamente tienen derecho a beneficiarse los accionistas de una corporación. *D.A.C.O. v. Alturas de Florida Dev. Corp.*, 132 DPR 905 (1993); *Dennis, Metro Invs. Corp. v. City Fed. Savs.*, 121 DPR 197, 209-210 (1988). A esos efectos, la Ley General de Corporaciones de 2009 en su Artículo 5.01 (C), 14 LPRA sec. 3591, dispone lo siguiente:

> ***Los tenedores de acciones*** preferidas o de acciones especiales, de cualquier clase o serie, ***tendrán derecho a dividendos*** a la tasa y en las condiciones y plazos que consten en el certificado de incorporación o en la resolución

o resoluciones que dispongan para la emisión de acciones y que se apruebe por la junta de directores según lo dispuesto anteriormente en esta Ley.
(Énfasis suplido).

Hacemos eco de las expresiones del profesor Carlos Díaz Olivo, al referirse a las acciones como "una expresión jurídica del accionista y de los derechos que la misma confiere sobre la corporación". C. Díaz Olivo, *Corporaciones*, Publicaciones Puertorriqueñas, Inc., pág. 151 (1999).

### E. Honorarios por temeridad

La conducta que amerita la imposición de honorarios de abogado por temeridad es cualquiera que haga necesario un pleito que se pudo evitar o que ocasione gestiones evitables. El propósito de la imposición de honorarios de abogado en casos de temeridad es establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte a innecesariamente asumir las molestias, gastos, trabajos e inconvenientes de un pleito. *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 150 (2022); *Andamios de P.R. v. Newport Bonding,* 179 DPR 503, 546 (2010); *Blas v. Hosp. Guadalupe,* 146 DPR 267, 334-335 (1998); *Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713, 718 (1987).

Algunas instancias en las cuales el Tribunal Supremo de Puerto Rico ha reconocido que una parte actúa de forma temeraria se constituyen cuando:

(1) contesta la demanda y niega responsabilidad total pero posteriormente la acepta,
(2) se defiende injustificadamente de la acción,
(3) cree que la cantidad reclamada es exagerada y es la única razón que tiene para oponerse a las peticiones del demandante, y no admite su responsabilidad pudiendo

limitar la controversia a la fijación de la cuantía a ser concedida,

(4) se arriesga a litigar un caso del que se desprende prima facie su responsabilidad, y

(5) niega un hecho que le consta es cierto a quien hace la alegación.

*SLG González-Figueroa v. SLG et al.,* supra, pág. 150; *C.O.P.R. v. S.P.U.,* 181 DPR 299, 342 (2011) citando a *Fernández v. San Juan Cement Co., Inc.,* supra, pág. 719; *Blas v. Hosp. Guadalupe,* supra, págs. 335-336.

Una vez un tribunal con competencia determina que se ha incurrido en temeridad, está llamado a imponer, a la parte que así haya actuado, el pago de cierta cantidad de dinero en concepto de honorarios de abogado. *Torres Montalvo v. Gobernador ELA,* 194 DPR 760, 778 (2016). Al respecto, la Regla 44.1 (d) de Procedimiento Civil, supra, dispone como sigue:

[...]

(d) Honorarios de Abogado - En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso de que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

*SLG González-Figueroa v. SLG et al.,* supra, pág. 145.

Aunque la penalidad por temeridad de una parte no está explícitamente consignada en las Reglas de Procedimiento Civil, supra, es a través de la imposición de honorarios de abogado, que el Tribunal ejerce esta facultad. Así, el juzgador tendrá que adjudicar el monto correspondiente al grado de temeridad desplegado por el actor, ello mediante el ejercicio de su sano juicio. Por tanto, la determinación que en su día emita, ***solo será objeto de revisión si***

*ha mediado abuso de discreción en el ejercicio de su ministerio. Colón Santos v. Coop. Seg. Múlt. P.R.,* 173 DPR 170, 188 (2008); *Blás v. Hosp. La Guadalupe,* supra, pág. 334; *Fernández v. San Juan Cement Co.,* supra, pág. 722. En dicho contexto, la doctrina vigente reconoce que un tribunal incurre *"en abuso de discreción cuando el juez: ignora sin fundamento algún hecho material; cuando [el juez] le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable". Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018). *Pueblo v. Custodio Colón,* 192 DPR 567, 588-589 (2015).

Es por ello que "la determinación de si se ha incurrido o no en temeridad es una tarea que recae en la discreción sana del tribunal sentenciador y *solo se intervendrá con ella en casos en los que se desprenda el abuso de tal facultad". SLG González-Figueroa v. SLG et al.,* supra, pág. 150 (2022); *Maderas Tratadas v. Sun Alliance et al,* 185 DPR 880, 926 (2012); *SLG Flores–Jiménez v. Colberg,* 173 DPR 843, 866 (2008). (Énfasis nuestro).

Finalmente, resaltamos que nuestra Alta Curia ha establecido que la imposición de honorarios por razón de temeridad no será apropiada "cuando existe alguna desavenencia honesta en cuanto a cuál de las partes beneficia el derecho aplicable". *Maderas Tratadas v. Sun Alliance et al.,* supra, pág. 926.

### III.

Coutín Rodríguez recurre ante nos, haciendo seis (6) señalamientos de error, y por los cuales nos solicita revoquemos la *"Sentencia"* apelada. Los errores levantados por el apelante son todos de derecho, por lo que nos vemos obligados a atenderlos individualmente.

En el *primero de estos errores*, Coutín Rodríguez arguye que en el caso de marras procedía la aplicación de la doctrina del cobro de lo indebido. Arguye, en esencia, que por haber recibido los dividendos previos a la normativa establecida en el caso de *E.L.A. v. Crespo Torres*, supra, no procede el deber de restituir. Esto, ya que, según el apelante, el pago indebido de los dividendos se debió a un error de derecho. *No le asiste razón.*

Sea un error de hecho o de derecho, el pago indebido requiere la configuración de tres requisitos esenciales. Como expusimos anteriormente, es necesario que el pago indebido se haga, entre otras cosas, por un ***error y no por mera liberalidad u otro concepto***.

Según la evidencia expuesta en los testimonios que evaluó el Foro Primario y la documentación aquilatada, quedó reiteradamente establecido que el apelante *nunca fue accionista*. Además, se estableció que el control y las facultades de disponer sobre PUI se propició mediante engaños, violencia mental, intimidación y engaño. Coutín Rodríguez coaccionó a su esposa, quien era la única accionista legítima de PUI, a firmar documentos con los que esta no estaba familiarizada, mientras la enajenaba de la corporación y del capital que producía. Además, mediante un documento con información falsa, se proclamó accionista en 50% de PUI, por lo que devengaba los dividendos de la misma ilegalmente.

Este Tribunal entiende que, en el caso de epígrafe, no se dan los elementos para el requisito que exige que un pago indebido se haga por error. Reiteramos que Coutín Rodríguez no recibió, indebida e ilegalmente, los dividendos PUI por un simple error. Este devengó los millones de dólares que cobró durante los años mediando esfuerzos conscientes de apropiarse ilegalmente de ellos.

En su *segundo y tercer señalamiento de error*, el apelante alega que el TPI-SJ se equivocó en su análisis, al determinar que este no

tiene derecho a los dividendos de las corporaciones en cuestión. Arguye que, por virtud de la Sociedad Legal de Bienes Gananciales que compartió con Pérez Labiosa, es acreedor de al menos la mitad de los dividendos. *No le asiste razón.*

El Foro Primario correctamente atiende este planteamiento haciendo dos importantes señalamientos. Primero, de la normativa esbozada previamente, queda meridianamente claro que el pago de los dividendos es un beneficio que disfrutan única y exclusivamente los accionistas de una corporación. Así lo estipula textualmente la Ley que regula la materia. Sin embargo, en apretada síntesis, el apelante sostiene que, aun cuando la interpretación acogida en el pleito es que PUI es un bien privativo, por haber sido los dividendos pagados en efectivo, se convierten en caudal ganancial.

No obstante, lo que no considera Coutín Rodríguez es que el Foro Primario no podía evaluar los hechos de este caso como uno de división ganancial, sin más. Por tanto, es necesario acercarse a la controversia planteada bajo el crisol de un caudal que ha sido víctima de actos constitutivos de engaño y violencia. Por eso, el TPI-SJ correctamente hace alusión a las expresiones de nuestro Alto Foro, al cautelar los Tribunales a evaluar si la prueba en casos en donde se diluciden controversias versadas en la Sociedad Legal de Bienes Gananciales surge que los esposos abusan de las facultades conferidas por la sociedad que comparten con sus esposas. *Banco de Ahorro del Oeste v. Santos,* 112 DPR 70, 76 (1982); *Vivaldi v. Mariani et al.*, 10 DPR 444, 448 (1906). El precitado caso advierte que, en estas instancias, el Tribunal ***deberá intervenir, impidiendo la consumación de fraude, anulando las obligaciones o beneficios obtenidos por el esposo, en perjuicio de los derechos de la esposa***. Id.

A la luz de lo anteriormente expuesto, la única conclusión lógica es que el Foro Apelado no se equivocó en su interpretación,

ya que los dividendos que arguye ser acreedor por virtud de la sociedad económica matrimonial, los apropió en su totalidad de manera fraudulenta. El apelante no dejó que su esposa dispusiera de los dividendos de los cuales era la única titular. Por los engaños y las tretas del apelante, Pérez Labiosa tampoco pudo disfrutarlos, correspondiéndole también por la Sociedad de Bienes Gananciales. Entendemos que no resonaría con la justicia reconocerle al apelante el derecho, que bajo otras circunstancias pudo haber prosperado, a la mitad de los dividendos, cuando, *y repetimos,* se los apropió ilegalmente de su fenecida excónyuge, mediante años de engaño y violencia.

En su *cuarto señalamiento de error*, Coutín Rodríguez nos hace el planteamiento de que la causa de acción de las apeladas estaba prescrita. Entendemos que el mismo es uno frívolo, por lo que *no le asiste razón.*

Los reclamos por daños y perjuicios, como aquellos expuestos en la reconvención de las apeladas, bajo el derogado Código, prescribían luego del transcurso de un (1) año. Código Civil de 1930, supra, ant. sec. 5298. Coincidimos con el Foro Apelado, que el término prescriptivo del pleito que nos ocupa, para efectos de las apeladas, comenzó a transcurrir con la destitución de Coutín Rodríguez el 10 de diciembre de 2013. Las apeladas presentaron su reconvención el 3 de septiembre de 2014, ocho (8) meses después de haber recobrado acceso a los documentos corporativos, que pusieron al descubierto, las causas de acción que han motivado sus reclamos.

En su *quinto (5) señalamiento de error*, Coutín Rodríguez alega que el Foro Apelado se equivocó al imponer honorarios de abogado por temeridad, para cada una de las apeladas. *No le asiste razón.*

Respecto a la conclusión que llega el Foro Primario, a saber, que el apelante fue temerario o frívolo en sus demandas y

aseveraciones, esta Curia se rehúsa a revocar o modificar el criterio del TPI-SJ. Este es el foro que por varios años presidió el pleito, aquilató la prueba y estudió la materia. Tal cual dicta la norma, dicha facultad es una inherente al ejercicio discrecional del adjudicador de hechos.

Como hemos sostenido en varias ocasiones, nos suscribimos a las determinaciones del Foro Apelado, al concluir que Coutín Rodríguez incoó un pleito corporativo, a sabiendas que no era accionista, y ahora pretende defender un derecho a los dividendos que obtuvo de manera ilegal. Siendo así, no podemos, sino coincidir, con la determinación de temeridad.

En su *sexto y último señalamiento de error*, el apelante expone que el TPI-SJ se equivocó al dictar sentencia sumaria a favor de las apeladas. *No le asiste razón.*

Luego de una sosegada evaluación del expediente que nos ocupa, de la solicitud de sentencia sumaria de las apeladas, y la revisión de *novo* sobre la misma, *lo cual en derecho nos corresponde*, hemos podido constatar que las determinaciones de hechos y derecho realizadas por el TPI-SJ en su *"Sentencia"* se sustentan con los documentos presentados por estas. A su vez, entendemos que el apelante no pudo controvertir los hechos, expuestos y probados, por las aquí apeladas. En mérito de lo antes expuesto, sostenemos el dictamen apelado en toda su extensión.

**IV.**

Por los fundamentos que anteceden, *confirmamos la "Sentencia" apelada.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones